**NEW YORK, C. & ST. L. R. CO. et al. v. UNITED STATES et al.**

Civil Action No. 27644.

United States District Court
N. D. Ohio, E. D.

Feb. 9, 1951.

Donald W. Hornbeck and Harold N. Mc-Laughlin, Kemper A. Dobbins and Thomas O. Broker, and Robert R. Pierce, all of Cleveland, Ohio, J. Aronson, New York City, J. J. Danhof, Detroit, Mich., and E. H. Burgess, F. E. Baukhages, Baltimore, Md., for plaintiffs.

Robert B. Hummel, Cleveland, Ohio, J. Stanley Payne and Daniel W. Knowlton, Washington, D. C., and Theodore H. Burgess, Robert M. Weh, Parker Fulton, George H. P. Lacey, Edwin K. Taylor (of Squire, Sanders & Dempsey), John A. Hadden, Henry C. Bogle, Harold A. Johnson, and M. C. Smith, Jr., Legal Dept., Erie Railroad Co., all of Cleveland, Ohio, for defendant.

Before ALLEN, Circuit Judge, and JONES and FREED, District Judges.

PER CURIAM.

### Findings of Fact.

1. This is an action by The New York, Chicago & St. Louis Railroad Company (hereinafter referred to as the "Nickel Plate"), The Baltimore and Ohio Railroad Company (hereinafter referred to as the "B. & O.") and The New York Central Railroad Company (hereinafter referred to as the "Central") against United States of America (hereinafter referred to as the "United States") and Interstate Commerce Commission (hereinafter referred to as the "Commission") to suspend, enjoin, set aside and annul the following orders of the Commission in its Finance Docket No. 16426, Detroit, Toledo & Ironton Railroad Co., et al. Control:

(a) An order of Division 4 of the Commission, dated May 2, 1950 approving and authorizing (subject to the conditions set forth in a report of the same date accompanying said order, 275 I.C.C. 455), acquisition by Pennsylvania Company and Wabash Railroad Company, and through the former by The Pennsylvania Railroad Company, of control of Detroit, Toledo and Ironton Railroad Company (hereinaft-

er referred to as "Ironton"), through ownership of capital stock; and acquisition by Pennsylvania Company, and through that Company by The Pennsylvania Railroad Company, with inclusion of Erie Railroad Company on an equal basis, of control of The Springfield Suburban Railroad Company (hereinafter referred to as the "Suburban"), through ownership of capital stock; and

(b) An order of the Commission dated August 8, 1950, denying petitions of the Nickel Plate, the Central and the B. & O. requesting reargument and reconsideration, and denial of the applications, or, in the alternative, participation on an equal basis with other carriers in the stock control of Ironton, or that the proceeding be reopened for further hearing on the question of joint control of Ironton (the petition of the Central also requesting authority to participate, on the same basis, in the control of the Suburban).

2. The proceeding in which these orders were issued was initiated by applications filed with the Commission by The Pennsylvania Railroad Company, Pennsylvania Company and Wabash Railroad Company (sometimes referred to herein jointly as "applicants"). The Nickel Plate, the B. & O., the Central and the Ironton, as well as Erie Railroad Company, The Akron, Canton & Youngstown Railroad Company and Railway Labor Executives' Association intervened in said proceedings. Notice of the filing of these applications was given to the Governors of the states in which the lines of the Pennsylvania Railroad, the Wabash, the Ironton and the Suburban are located and the applications were reported in the public press. No governmental authority, federal, state, county or municipal, no organization of shippers or individual shippers and no Chamber of Commerce or Board of Trade appeared at the subsequent hearings before the Commission to oppose the granting of the applications.

3. Extensive hearings were held before examiners of the Commission. All of the evidence there introduced has been presented to this Court. It included, among other things, the applications and the exhibits attached thereto, oral testimony and documentary material with respect to the following:

(a) The contemplated sale of the Ironton and Suburban stock by its present owner and the merits of having that stock pass to carrier control.

(b) The desirability and soundness of the proposed stock acquisitions by Wabash and Pennsylvania from the standpoint of financial investment for those carriers.

(c) The volume of interchange of traffic among all of the carriers connecting with Ironton and Suburban and the relative interests of those carriers in preservation of their interchange as well as the effect upon the shipping public of the preservation of Ironton's and Suburban's interchange traffic.

(d) The anticipated effect of the proposed acquisitions upon the locomotive and car supply of Ironton.

(e) The anticipated effect of the proposed acquisitions upon the shipping public by the restoration of through train service between Cincinnati and Detroit via Springfield, Ohio.

(f) The anticipated effect of the proposed acquisitions on industrial development along the lines of the Ironton.

(g) The anticipated effect of the proposed acquisitions upon operating, accounting, purchasing and financing economies on the Ironton and the Suburban.

(h) The effect of the proposed transaction upon adequate transportation service to the public, and upon the public interest from the standpoint of decrease and increase in carrier competition.

(i) The effect upon the public interest of the inclusion or failure to include other railroads in the territory involved in the proposed transactions.

(j) That no increase in total fixed charges of any of the carriers involved would result from the proposed transactions and that the interests of the carrier employees affected had been adequately provided for.

(k) That the terms and conditions of the proposed transactions are just and reasonable.

(1) That the consummation of the proposed transaction would be consistent with the public interest.

4. The examiners made a proposed report recommending that the Commission find the proposed transactions consistent with the public interest and that the Commission approve and authorize the transactions subject to certain conditions, and subject to the inclusion of Erie Railroad Company in the control of Suburban. Exceptions to the proposed report and replies to the exceptions were filed and the matter was orally argued before Division 4 of the Commission. As of May 2, 1950, the Commission, by Division 4, issued the first order involved in this action, with accompanying report, approving and authorizing the transactions subject to conditions designed to maintain the independence of the Ironton and the Suburban under the proposed control and subject to the inclusion of Erie Railroad Company in the control of Suburban through ownership of one-half of its capital stock.

5. Petitions for reargument and reconsideration were subsequently filed by the plaintiffs herein and replies thereto were filed by the applicants. These petitions were argued before the entire Commission, which denied them by its order of August 8, 1950, the second order involved in this action, and made the order of May 2, 1950 effective on August 23, 1950. This suit was commenced on August 22, 1950. The Commission, at the request of this Court, has postponed the effective date of said order of May 2, 1950 from time to time until February 23, 1951.

6. In its report of May 2, 1950 the Commission made, *inter alia,* the following ultimate findings (pp. 493–494):

"Subject to the detailed conditions set forth above, and the further conditions for the protection of employees mentioned heretofore, we find that acquisition by Pennsylvania Company and Wabash Railroad Company, and through the former, by the Pennsylvania Railroad Company, of control of the Detroit, Toledo and Ironton Railroad Company through ownership of capital stock; and acquisition by Pennsylvania Company, and through that company by Pennsylvania Railroad Company, with inclusion of Erie Railroad Company on an equal basis, of control of the Springfield Suburban Railroad Company through ownership of capital stock, are transactions within the scope of section 5(2) of the Interstate Commerce Act, as amended [49 U.S.C.A. § 5(2)], that the terms and conditions are just and reasonable, and that said transactions, with the inclusion of the Erie Railroad Company in the control of the Springfield Suburban Railroad Company, will be consistent with the public interest."

7. In the report these ultimate findings are adequately supported by statements of findings, reasons, conclusions and supporting data (all hereinafter referred to as "subsidiary findings"), which show that the Commission gave weight to all the required statutory considerations, and which include the following:

### A. With Respect to Ironton

(1) That the proposed acquisition will preserve the present management of Ironton and will result in substantial affirmative improvements in service with resultant benefits to the public.

The Commission found that Ironton under its present management is efficiently operated (p. 469); that its identity as an operating railroad entity is to remain exactly as it is today (p. 489); that credence must be given to applicants' assurances that there is no intention to interfere with Ironton's policies of independent operation and its right freely to interchange traffic with all connections (pp. 491–492); that no change in operating practices is contemplated except probably the re-establishment of a joint through train service between Detroit and Cincinnati via Springfield, resulting in an improved and expedited service to the benefit of shippers without diversion of traffic from any one existing route or carrier (pp. 472, 473); and that by utilization of applicants' equipment, Ironton may be relieved to some extent from making future capital expenditures which otherwise might be necessary (p. 474).

(2) That the proposed acquisition will be beneficial to the applicants.

The Commission found that Pennroad Corporation, the present owner of the Ironton stock, has determined to sell it in order to diversify its investments (p. 471); that the agreed price for the stock is fair and reasonable (p. 472); that in the past, Ironton dividends were paid out to non-carrier interests, but that under applicants' control, future dividends would be available for improvements of the railroad industry (p. 473); that it would be in the public interest for control of Ironton to pass from the non-carrier investment company to carrier auspices, and that the most logical owners would be the applicants, whose interests are superior to those of any other carrier on the basis of interchange (p. 492).

(3) That there is no danger of substantial harm to the plaintiffs from the proposed acquisitions.

The Commission found that applicants have given assurance that all existing interchange points are to be kept open and maintained and that all through routes and traffic arrangements are to be continued, and that such additional through routes and joint rates as will improve transportation service to the public will be established (p. 472); that there is no basis for a finding that control of Ironton by applicants would seriously affect the ability of the plaintiffs to provide adequate transportation service to the public (p. 489); that plaintiffs' predictions of dire results from this proposed control are not supported by actual experiences of the past, (p. 490); that plaintiffs' anticipated loss as a result of traffic diversion following applicants' control of Ironton is too pessimistic (pp. 490–491); and that adherence to the six conditions prescribed in the report (pp. 492–493), coupled with the right of shippers on the Ironton to route their traffic, would prevent any serious effect upon plaintiffs' continued adequate transportation service to the public (p. 493);

(4) That the Competitive position of Ironton will not be impaired but will be improved by the proposed acquisition.

The Commission found that there is no direct carrier competition between the applicants and Ironton and that approval of the transaction would not be inimical to the public interest from the standpoint of elimination of competition (p. 491).

(5) That the record did not establish that the inclusion of railroads other than the applicants in the transaction would be in the public interest.

The Commission stated that they were not convinced that the diffusion of control of Ironton by inclusion of other railroads would be in the public interest (p. 493), and that the request of the B. & O. for trackage rights over the Ironton is not warranted (p. 485).

(6) That the total fixed charges resulting from the proposed transaction will not be increased and that the interest of the carrier employees will not be affected.

The Commission found that no increase in the total fixed charges of any carrier engaged in the transportation of persons or property in interstate commerce will result from the proposed transaction (p. 493), and provision has been made for the protection of the interests of Ironton employees (p. 487).

### B. With Respect to Suburban

The Commission found in the report of May 2, 1950, that the agreed price for the Suburban stock is fair and reasonable (p. 472); that adherence to the six conditions prescribed in the report (pp. 492–493), coupled with the right of shippers on the Suburban to route their traffic, would prevent any serious effect upon plaintiffs' continued adequate transportation service to the public (p. 493); that except for the request of the Erie Railroad Company, no carrier had sought to be included in the Suburban transaction (p. 493); that, in 1948, a total of 85.4 per cent of all cars handled by Suburban was interchanged with Ironton or Erie (p. 470); that no increase in the total fixed charges of any carrier engaged in the transportation of persons or property in interstate commerce will result from the proposed acquisition (p. 493), and provision has been made for the protection of the interests of Suburban employees (p. 487).

8. That the ultimate findings and the subsidiary findings stated in the Commission's report are supported by substantial

evidence of record in the proceeding before the Commission and presented to the Court in this action.

9. That the ultimate findings and the subsidiary findings of the Commission stated in the Commission's report are not arbitrary or unreasonable.

10. The Commission reasonably exercised its administrative discretion, and gave further and conclusive evidence of its consideration of the transportation and competitive factors involved, when it prescribed the six conditions (pp. 492–493), relating to the maintenance of existing routes and channels of trade, the neutrality of handling traffic without discrimination, the maintenance of existing traffic and operating relationships, the prohibition of discrimination in service, the preservation of the rights of industries to direct the routing of their own traffic, and the reservation of jurisdiction in the Commission, to which conditions the Commission's order of May 2, 1950, was made subject; and the Commission's conclusion that these conditions, including specifically its own reservation of jurisdiction, were adequate to insure that the independence of Ironton and Suburban will be maintained under the control approved and authorized by said order, together with its consideration of the evidence in the record and the salient factors inherent in the public interest as reflected in the national transportation policy, as shown by its report, sustains the Commission's ultimate finding as to the public interest.

11. That the Commission did not abuse its discretionary power in making its order of August 8, 1950 denying the petitions of the Nickel Plate, the Central and the B. & O., plaintiffs herein, requesting reargument and reconsideration and denial of the applications of applicants or, in the alternative, participation on an equal basis with other carriers in the stock control of Ironton, or that the proceeding be reopened for further hearing on the question of joint control of Ironton (the petition of Central also requesting authority to participate on the same basis in the control of Suburban); and that said order of August 8, 1950 is not arbitrary or unreasonable.

Conclusions of Law

1. The Court has jurisdiction of the parties and of the subject matter of this action.

2. In passing upon the proposed transactions and in reaching its ultimate conclusion and finding that said transactions are consistent with the public interest, the Commission gave weight to the following considerations, among others:

(a) the effect of the proposed transactions upon adequate transportation service to the public;

(b) the effect upon the public interest of the inclusion, or failure to include, other railroads in the territory involved in the proposed transactions;

(c) the total fixed charges resulting from the proposed transactions; and

(d) the interest of the carrier employees affected;

and the Commission's conclusions and findings upon these considerations are adequately shown and expressed in its report.

3. The ultimate findings and the subsidiary findings set forth in the Commission's report of May 2, 1950 are supported by substantial evidence, were made in observance of the procedure required by law, are within the statutory jurisdiction and authority of the Commission, are not arbitrary or capricious, do not constitute an abuse of discretion, are in all respects in accordance with law, and are adequate to support the order.

4. The conclusions, ultimate findings, subsidiary findings, and the conditions prescribed by the Commission, set forth in its report of May 2, 1950, disclose, and the evidence supports, that due consideration was given by the Commission to the scope and effect of the competitive factors involved in the acquisitions approved by it in the light of the national transportation policy, and therefore such acquisitions, as conditioned by the Commission, are relieved from the operation of the anti-trust laws.

5. The Commission did not abuse its discretion or otherwise err in making its order of August 8, 1950 denying plaintiffs' respective petitions for reargument, recon-

816

sideration and denial of the applications or, in the alternative, participation in control.

6. The injunction should be denied and the complaint should be dismissed.